IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARLOS FLORES and LAWRENCE BARTLEY, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>  -against-<br><br>TINA M. STANFORD, as Chairwoman of the New York State Board of Parole, *et al.*,<br><br>        Defendants. | No. 18-cv-02468 (VB) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF CARLOS FLORES'S MOTION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ..........................................................................................1

ARGUMENT........................................................................................................................1

I. PLAINTIFF HAS A CLEAR LIKELIHOOD OF SUCCESS.............................1

    A. Plaintiff Has an Eighth Amendment Right Under *Miller* and *Montgomery*.............1

    B. Plaintiff Has a Due Process Right to Have the Commissioners Actually Review the Materials Presented..............................................................................5

II. PLAINTIFF HAS MADE A STRONG SHOWING OF IRREPARABLE HARM............7

III. PLAINTIFF HAS SHOWN THAT THE EQUITIES TIP IN HIS FAVOR AND AN INJUNCTION IS IN THE PUBLIC INTEREST. .......................................................8

IV. ABSOLUTE IMMUNITY DOES NOT BAR CLAIMS FOR PROSPECTIVE INJUNCTIVE RELIEF....................................................................................................8

V. *YOUNGER* ABSTENTION IS UNWARRANTED. ..........................................................9

CONCLUSION...................................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barna v. Travis*, 239 F.3d 169 (2d Cir. 2001) ................................................................................2

*Brown v. Precythe*, No. 2:17–cv–04082–NKL, 2017 WL 4980872 (W.D. Mo. Oct. 31, 2017) ...................................................................................................................................1, 5

*Cicero v. Olgiati*, 410 F. Supp. 1080 (S.D.N.Y. 1976) ..................................................................10

*Craig v. Cain*, No. 12 Civ. 30035, 2013 WL 69128 (5th Cir. Jan. 4, 2013) ...................................2

*Davis v. McCollum*, 798 F.3d 1317 (10th Cir. 2015) .....................................................................2

*Doe v. Annuci*, No. 14 Civ 2953 (PAE), 2015 WL 4393012 (S.D.N.Y. July 15, 2015) ...............10

*Envtl. Servs., Inc. v. Recycle Green Servs., Inc.*, 7 F. Supp. 3d 260 (E.D.N.Y. 2014) ....................8

*Falco v. Justices of the Matrimonial Parts of Suffolk Cty.*, 805 F.3d 425 (2d Cir. 2015) .............10

*Flowers v. State*, 907 N.W.2d 901 (Minn. 2018) ...........................................................................2

*Graham v. Florida*, 560 U.S. 48 (2011) .....................................................................................3, 4

*Graziano v. Pataki*, 689 F.3d 110 (2d Cir. 2012) ..........................................................................2

*Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1 (1979) ................................2

*Greiman v. Hodges*, 79 F. Supp. 3d 933 (S.D. Iowa 2015) ....................................................2, 4, 5

*In re Hawkins*, 140 A.D.3d 34 (3d Dep't 2016) .....................................................................1, 4, 5

*Jacobs v. Mostow*, 271 F. App'x 85 (2d Cir. 2008) .......................................................................8

*Linares v. Annucci*, 710 F. App'x 467 (2d Cir. 2017) ...................................................................6

*Miller v. Alabama*, 567 U.S. 460 (2012) ............................................................................. passim

*Montgomery v. Louisiana*, 136 S. Ct. 718 (2016) ............................................................... passim

*Nat'l Basketball Ass'n v. Williams*, 857 F. Supp. 1069 (S.D.N.Y. 1994) .......................................9

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350 (1989) ...............10

*Proctor v. LeClaire*, 846 F.3d 597 (2d Cir. 2017) .........................................................................6

*Pulliam v. Allen*, 466 U.S. 522 (1984) ...........................................................................................8

*Shmueli v. City of New York*, 424 F.3d 231 (2d Cir. 2005) ............................................................8

*Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013)..................................................................10

*Starks v. Easterling*, 659 F. App'x 277 (6th Cir. 2016)..................................................................2

*Swarthout v. Cooke*, 562 U.S. 216 (2011) .....................................................................................2

*United States v. Garcia*, 666 F. App'x 74 (2d Cir. 2016)...............................................................3

*United States v. Reingold*, 731 F.3d 204 (2d Cir. 2013)................................................................2

*Virginia v. LeBlanc*, 137 S. Ct. 1726 (2017) ..................................................................................3

**Statutes & Rules**

42 U.S.C. § 1983..............................................................................................................................9

Antiterrorism and Effective Death Penalty Act of 1996.................................................................2

FCIA, Pub. L. No. 104-317, § 309(c), 110 Stat. 3847, 3853 (1996) ..............................................9

Fed. R. Civ. P. 57.............................................................................................................................9

**Other Authorities**

Eighth Amendment ................................................................................................................ passim

## PRELIMINARY STATEMENT

Plaintiff Carlos Flores is 54 years old and has been incarcerated for felony murder since age 17.  Defendants never dispute that his crime reflects "unfortunate yet transient immaturity".  *Montgomery v. Louisiana*, 136 S. Ct. 718, 734 (2016) (quoting *Miller v. Alabama*, 567 U.S. 460, 479 (2012)).  As a person facing a life sentence for a crime committed as a juvenile, Plaintiff is entitled to an opportunity for release based on demonstrated maturity and rehabilitation.  Defendants acknowledge that they will not apply that legal standard, and instead claim the power to deny him parole indefinitely, regardless of his demonstrated maturity or rehabilitation, based on their judgment that his release would somehow deprecate the seriousness of the crime or undermine respect for law.  And Defendants do not contest the facts showing they repeatedly denied Plaintiff parole without meaningfully evaluating the evidence of his maturity and rehabilitation, in violation of his Due Process rights.  Without intervention, Defendants will violate those constitutional rights again at the hearing next week.  This Court should grant relief.

## ARGUMENT

### I. PLAINTIFF HAS A CLEAR LIKELIHOOD OF SUCCESS.

#### A. **Plaintiff Has an Eighth Amendment Right Under *Miller* and *Montgomery*.**

Defendants' position that *Miller* and its progeny have no bearing on decisions to grant or deny parole (Opp'n Br. 13-15) is untenable.  Defendants' position in this litigation contradicts their own acknowledgment that they issued the new Board of Parole regulations "in order to comply with recent United State Supreme Court jurisprudence".  (Ryan Ex. 12 at 8.)  Defendants' position was squarely rejected by *In re Hawkins*, 140 A.D.3d 34, 37-40 (3d Dep't 2016), a case Defendants elsewhere defend (Opp'n Br. 8; Stanford Decl. ¶ 9), and would eviscerate the holding of the *Miller* line of cases, as other courts have recognized, *Brown v. Precythe*, No. 2:17–cv–04082–NKL, 2017 WL 4980872, at *7-9 (W.D. Mo. Oct. 31, 2017);

1

*Greiman v. Hodges*, 79 F. Supp. 3d 933, 943-44 (S.D. Iowa 2015). In particular, because "*Miller*'s central intuition" is that children are "capable of change", *Montgomery*, 136 S. Ct. at 736, states must provide an opportunity for parole that is meaningful and "based on demonstrated maturity and rehabilitation", so that only those "rare juvenile offenders" who "have shown an inability to reform will continue to serve life sentences". *Id*. at 734, 736. Applying these cases only at sentencing, as Defendants propose (Opp'n Br. 13-14), makes no sense because by definition a juvenile lifer cannot "demonstrate[] maturity and rehabilitation" until a later time, well after sentencing. Unsurprisingly, Defendants cite to no case that stands for the proposition that *Miller* and *Montgomery* do not apply at parole hearings.[1]

Defendants argue in the alternative that, even if these requirements apply to parole hearings, Plaintiff is not constitutionally entitled to a "meaningful opportunity to obtain release" at his next parole hearing. (Opp'n Br. 15.) Defendants once again contradict their own position. While they misapprehend the applicable constitutional standard, Defendants concede that *Hawkins* and their own regulations impose the constitutional obligations of *Miller* and

---

[1] Defendants rely on *Swarthout v. Cooke*, 562 U.S. 216 (2011), *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1 (1979), *Graziano v. Pataki*, 689 F.3d 110 (2d Cir. 2012), and *Barna v. Travis*, 239 F.3d 169 (2d Cir. 2001), which examined whether state law created a liberty interest, such that federal due process rights attached. (Opp'n Br. 13-14, 14 n.16.) Those cases had no occasion to consider whether a liberty interest is created by the Eighth Amendment as interpreted by *Montgomery* and *Miller*.

The cases on which Defendants rely in footnote 17 are likewise inapposite. *Davis v. McCollum*, 798 F.3d 1317 (10th Cir. 2015), and *Starks v. Easterling*, 659 F. App'x 277 (6th Cir. 2016), are each governed by the extreme deference owed under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), inapplicable here. Unlike *Flowers v. State*, 907 N.W.2d 901, 906 (Minn. 2018), where the court refused to extend *Miller* to consecutive sentences, the issue of consecutive sentences is not present here. Finally, *Craig v. Cain*, No. 12 Civ. 30035, 2013 WL 69128 (5th Cir. Jan. 4, 2013), and the dicta in *United States v. Reingold*, 731 F.3d 204, 214 (2d Cir. 2013), each predate *Montgomery*, and are inconsistent with *Montgomery*'s holding that *Miller* categorically bars sentencing to a lifetime in prison juveniles who were not irredeemable.

2

*Montgomery* to all parole hearings for "Minor Offenders" upon completion of their minimum sentence. (*See* Opp'n Br. 4; Ryan Ex. 12 at 8.) Moreover, neither the Board's regulations nor the Legislature has directed that compliance with Supreme Court precedent should commence at any time later than the initial parole hearing.[2] Defendants cannot carve out this exception.

        Here, the Legislature and sentencing judge determined that, taking into account the gravity of Plaintiff's crime, he would become eligible for parole after serving 21 years. Defendants' argument—that, because Mr. Flores has not served a term of years approaching actuarial morbidity, he is not *yet* entitled to release based on demonstrated maturity and rehabilitation—is at odds with the penological justifications for punishing juvenile offenders established in *Graham*, 560 U.S. at 71-73, and Mr. Flores's substantive right to a proportionate punishment based on his diminished culpability and greater capacity for reform. The purpose of guaranteeing the possibility of parole to all but the rarest of juveniles is so that "their hope for some years of life outside prison walls [would] be restored" and to "ensure[] that juveniles whose crimes reflected only transient immaturity—and who have since matured—will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment." *Montgomery*, 136 S. Ct. at 736-37.

---

[2] Defendants also confuse the question of the term of years that may be lawfully imposed on juveniles *prior to parole eligibility* with the question of what standard must be applied at parole hearings *once eligible*. The cases relied on by Defendants are not to the contrary. The dissent in *Graham v. Florida*, 560 U.S. 48 (2011), is not precedential. *United States v. Garcia*, 666 F. App'x 74, 78 (2d Cir. 2016), concerns the imposition of a life sentence after an individualized hearing with full consideration of *Miller* factors and has no bearing on the legal question presented here. And in *Virginia v. LeBlanc*, 137 S. Ct. 1726, 1728-29 (2017), the Supreme Court adopted the "demonstrated maturity and rehabilitation" standard for juvenile release and held only that a state's geriatric release program was not "objectively unreasonable" under a deferential standard pursuant to the AEDPA. The *LeBlanc* Court "expresse[d] no view on the merits of the underlying Eighth Amendment claim" because of the "narrow" scope of federal habeas review. *Id*. at 1729. Thus, *LeBlanc* did not hold that the Eighth Amendment requires nothing more than normal parole procedures until some unknown time during Plaintiff's lifetime.

Defendants' brief makes plain that they are applying the wrong legal standard by merely *considering* the characteristics of youth as one of many factors. (Opp'n Br. 16-17.) Although states can "explore the means and mechanisms for compliance" with the Eighth Amendment's proportionality principles for juvenile offenders, *Graham*, 560 U.S. at 75, the Supreme Court has held that the *Miller* standard does "*more* than require a sentencer to [merely] consider a juvenile offender's youth" as one among many factors, *Montgomery*, 136 S. Ct. at 734 (emphasis added). Defendants never address this language or explain how the new Board of Parole regulations can be reconciled with it.[3] Defendants argue that *Miller* is satisfied because their regulations require them to "consider youth and immaturity at the time of the crime, and any subsequent growth and rehabilitation, in making parole determinations". (Opp'n Br. 17.) Mere consideration of an offender's youth, however, is not enough: Defendants instead must assess whether a juvenile lifer's "crime reflects 'unfortunate yet transient immaturity'", *Montgomery*, 136 S. Ct. at 734 (quoting *Miller*, 567 U.S. at 479), and, if so, must provide "some meaningful opportunity to obtain release *based on* demonstrated maturity and rehabilitation".[4] *Graham*, 560 U.S. at 75 (emphasis added).

Finally, Defendants' submission of aggregate release rates is irrelevant to the legal question at issue. As an initial matter, the Bryant declaration defines the term "Minor

---

[3] Notably, Defendants' precise argument was proffered by the state and rejected by the Court in *Montgomery*. The *Montgomery* Court explained that mere consideration of youth "conflates a procedural requirement necessary to implement a substantive guarantee" with a rule that only sets forth the manner of determining culpability and punishment. *Montgomery*, 136 S. Ct. at 734-35; *see also Hawkins*, 140 A.D.3d at 39 n.7 (quoting *Montgomery*, 136 S. Ct. at 735).

[4] Defendants also misunderstand the applicable legal standard elsewhere in their motion papers. Defendants repeatedly indicate that they may simply "consider an inmate's youth and maturity *at the time of the crime*" (Opp'n Br. 8 (emphasis added)). Though "youth" and "immaturity" at the time of the offense are relevant, it is a juvenile lifer's "demonstrated maturity and rehabilitation" *at the time of the parole hearing* that entitles him to release. *Greiman*, 79 F. Supp. 3d at 943.

4

Offenders" to include all persons "who committed their crimes when they were under 18 years old", without defining crime or whether they are serving indeterminate life sentences. (Bryant Decl. ¶ 4.) This group is too broad to be relevant to this case. Moreover, Defendants' statistics do not show a meaningful change in release rates following the enactment of new regulations and cannot identify the cause of any change. (*See id.* ¶¶ 7-10.) Therefore, they do not support Defendants' assertion that the new regulations have made a difference. In any event, Defendants' statistics cannot refute the record of unconstitutional behavior against *this* Plaintiff, and do not excuse Defendants from applying the wrong legal standard in parole hearings.

      **B.**      **Plaintiff Has a Due Process Right to Have the Commissioners Actually Review the Materials Presented.**

In this Motion, Plaintiff seeks a basic element of due process—that the Commissioners actually review the materials he provides to demonstrate his maturity and rehabilitation. Plaintiff is entitled to a process that "gives effect to *Miller*'s substantive holding that life without parole is an excessive sentence for children whose crimes reflect transient immaturity". *Montgomery*, 136 S. Ct. at 735. The "procedural component" of the Supreme Court's jurisprudence applies at parole hearings such as Plaintiff's. *Hawkins*, 140 A.D.3d at 38-39; *Brown*, 2017 WL 4980872, at *7-9; *Greiman*, 79 F. Supp. 3d at 943-45.

Defendants assert that Plaintiff has no due process rights, but they do not—and cannot—reconcile that assertion with the "procedural component" recognized by *Miller* and *Montgomery*. Instead, Defendants rely on Second Circuit cases that consider only whether the New York parole statute creates a vested liberty interest for all parole applicants in release.

(Opp'n Br. 20 n.18.)[5]  Those cases do not purport to address whether *Miller* and *Montgomery* create a liberty interest for juvenile lifers.  The Supreme Court decisions control.

Next, Defendants assert that there is "no evidence" that Plaintiff's due process rights will be violated absent relief from this Court.  (Opp'n Br. 22.)  Not so.  Chairwoman Stanford's testimony to the State Senate (Ryan Decl. Ex. 10) establishes that Commissioners routinely fail to meaningfully consider the materials that are necessary to evaluate Plaintiff's demonstrated maturity and rehabilitation.  Even though Ms. Stanford submits a declaration in opposition to this Motion, she carefully does not contradict the testimony she gave to the State Senate earlier this year.  That testimony is all the evidence Plaintiff needs.  (*See* Ryan Decl. Ex. 10, 36:18-38:9 (non-lead Commissioners do not have the most relevant portions of the file), 48:24-49:19 (Commissioners often do not read the file before conducting parole hearings)).

Defendants do not contest that, if parole applicants have a liberty interest in parole hearings, due process requires "real evaluations" of the record, where Commissioners "consider all of the relevant evidence".  *Proctor v. LeClaire*, 846 F.3d 597, 614 (2d Cir. 2017).  Based on Ms. Stanford's undisputed testimony, Defendants fail to meet this basic due process standard.

Defendants point to Mr. Flores's most recent hearing as evidence that there was nothing "demonstrating that the panel was unprepared or unfamiliar with his case".  (Opp'n Br. 24.)  But the transcripts demonstrate that Commissioners did not fully review the evidence of Mr. Flores's maturity and rehabilitation.  (*See* Pl.'s Br. 21-22.)  Finally, Defendants rely shamelessly on the hearing for co-plaintiff Lawrence Bartley on April 4, 2018.  (Opp'n Br. 24

---

[5] Defendants fail to acknowledge that the Second Circuit recently held that amendments to the New York parole statute may create such a liberty interest. *See Linares v. Annucci*, 710 F. App'x 467, 470 (2d Cir. 2017).  But the Court need not reach that issue on this Motion, as Plaintiff relies here on the liberty interest created by *Miller* and *Montgomery*.

n.23.) Of course, this hearing was held *after* Plaintiffs filed this lawsuit, when Defendants knew there would be scrutiny of their processes by this Court. By contrast, Defendants have denied Mr. Flores parole *ten times* without any such meaningful review of the evidence. If Defendants want to pride themselves on the due process they gave Mr. Bartley after Plaintiffs filed this lawsuit, Defendants should have no problem expressly representing that they would give Mr. Flores the same due process—but their opposition papers conspicuously fail to do so.

## II. PLAINTIFF HAS MADE A STRONG SHOWING OF IRREPARABLE HARM.

The violation of Plaintiff's constitutional rights constitutes irreparable harm—particularly where (as here), Plaintiff will remain incarcerated until he receives a meaningful opportunity for release based on demonstrated rehabilitation and maturity. Defendants make no attempt to distinguish Plaintiff's cases, which establish irreparable harm. (*See* Pl.'s Br. 23.)

Instead, Defendants try to distract from the issues on this motion by contending that Plaintiff has unduly delayed. This is a surprising argument given Defendants' own record of dilatory behavior. In the past two-and-a-half years, Defendants have held three unconstitutional parole hearings for Plaintiff. Plaintiff challenged *pro se* his October 2015 hearing by bringing an administrative appeal, an Article 78 petition and Article 78 appeal (which resulted in a *de novo* hearing in June 2017, in which Defendants again failed to apply the constitutional standard), and through counsel perfected administrative appeals of the June and October 2017 hearings months before the filing deadlines. Defendants, by contrast, have consistently dragged their feet and avoided addressing Plaintiff's constitutional claim. Finally, on March 5, 2018, the Parole Board Appeals Unit ordered yet another *de novo* hearing, but again ignored Plaintiff's constitutional claim and refused to instruct Commissioners that the Eighth Amendment requires them to release Mr. Flores if he has demonstrated maturity and rehabilitation. (Ryan Decl. Ex. 9.)

On March 20, 2018, *ten days* after Plaintiff's counsel received the Parole Board Appeals Unit decision, Plaintiff filed his Class Action Complaint. On April 6, just over *two weeks* later, Plaintiff's counsel informed the Attorney General's Office of the intention to file this Motion for Preliminary Injunction. On April 16, *ten days* later, Plaintiff filed the motion with supporting materials. Plaintiff has done everything within his power to move expeditiously. As Defendants' own lead case demonstrates, courts have held that much slower conduct does not constitute undue delay and does not undercut irreparable harm. *See Envtl. Servs., Inc. v. Recycle Green Servs., Inc.*, 7 F. Supp. 3d 260, 279-80 (E.D.N.Y. 2014) (plaintiff established irreparable harm where it filed PI motion five months after filing complaint, and seven weeks after defendant's renewed conduct). This is nothing like cases where the plaintiff slept on his rights. (*See* cases cited in Opp'n Br. 9-10 nn.12-13.) Plaintiff has been diligent in asserting his rights.

### III. PLAINTIFF HAS SHOWN THAT THE EQUITIES TIP IN HIS FAVOR AND AN INJUNCTION IS IN THE PUBLIC INTEREST.

The balance of hardships and the public interest also favor an injunction. Defendants claim those factors weigh against relief because an injunction would limit the broad discretion to deny parole that Defendants believe they enjoy under state law. (Opp'n Br. 8-9.) But that discretion is limited by the Eighth Amendment, and it causes no cognizable harm to Defendants or the public interest if this Court recognizes that constraint. Nor is Plaintiff's Eighth Amendment theory "novel and unprecedented". (Opp'n Br. 8.) Rather, it is a faithful application of Supreme Court precedent.

### IV. ABSOLUTE IMMUNITY DOES NOT BAR CLAIMS FOR PROSPECTIVE INJUNCTIVE RELIEF.

Contrary to Defendants' contention (Opp'n Br. 5), absolute immunity does not bar claims for prospective injunctive relief. *See Pulliam v. Allen*, 466 U.S. 522, 541-42 (1984);

*Shmueli v. City of New York*, 424 F.3d 231, 239 (2d Cir. 2005); *Jacobs v. Mostow*, 271 F. App'x 85, 88 (2d Cir. 2008).  Under the Federal Courts Improvement Act of 1996, however, in "any action brought against a judicial for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable".  FCIA, Pub. L. No. 104-317, § 309(c), 110 Stat. 3847, 3853 (1996) (amending 42 U.S.C. § 1983).  The amendment therefore requires litigants in § 1983 actions against judicial or quasi-judicial officers first to obtain declaratory relief (where such relief is available), before they may seek an injunction to enforce potential noncompliance with a declaratory judgment.

The statutory amendment has little or no practical effect here.  Plaintiff may obtain in substance all of the relief sought in the present Motion for Preliminary Injunction in the form of a declaratory judgment:  a declaration that (1) Defendants must determine whether to grant release to Mr. Flores at his upcoming May hearing based on an assessment of his demonstrated maturity and rehabilitation and (2) Defendants must actually review the materials Mr. Flores provides to demonstrate his maturity and rehabilitation.  The Court may order this relief in a "speedy hearing of a declaratory-judgment action".  Fed. R. Civ. P. 57*; see, e.g.*, *Nat'l Basketball Ass'n v. Williams*, 857 F. Supp. 1069, 1070 n.1 (S.D.N.Y. 1994) (deciding declaratory action one month after action was brought).  The parties' papers make clear that this is a purely legal dispute relating to the constitutional standard, and there is no dispute concerning the fact that all three Commissioners generally do not review the entire parole file.  To the extent the Court decides it is impracticable to hold a speedy hearing for declaratory relief in advance of Plaintiff's upcoming parole hearing, this case falls within the exception where "declaratory relief was unavailable", 42 U.S.C. § 1983, and the Court may grant a preliminary injunction.

## V.   *YOUNGER* ABSTENTION IS UNWARRANTED.

Defendants apply the wrong test for *Younger* abstention. (Opp'n Br. 5-6.) A federal court's "obligation" to decide cases within its jurisdiction is "virtually unflagging". *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (internal quotation marks omitted). *Younger* abstention is warranted only in three "exceptional circumstances": (1) "ongoing state criminal prosecutions"; (2) "certain civil enforcement proceedings"; and (3) "civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions". *Id.* at 78 (internal quotation marks omitted). In *Sprint*, the Supreme Court rejected the abstention test on which Defendants rely.[6]

Here, *Younger* does not apply because there is no ongoing state proceeding. Plaintiff's administrative appeal was resolved in a "Final Determination". (Ryan Decl. Ex. 9.) Plaintiff's parole hearing is not scheduled until May 22 or 23. "[T]here is no doctrine that the availability or even the pendency of state judicial proceedings excludes the federal courts." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 373 (1989). Rather, as *Sprint* explains, the proceeding must be "ongoing". Here, there simply is no ongoing state proceeding, and accordingly, *Younger* abstention is unwarranted.[7]

### CONCLUSION

The Court should grant Mr. Flores's Motion for Preliminary Injunction.

---

[6] *See id.* at 81-82 (holding that *Middlesex* factors do not apply beyond the "three 'exceptional circumstances'" listed above, as otherwise courts would "extend *Younger* to virtually all parallel state and federal proceedings"); *see also Falco v. Justices of the Matrimonial Parts of Suffolk Cty.*, 805 F.3d 425, 427 (2d Cir. 2015) (holding district court erred in treating *Middlesex* factors as dispositive). (*See* Opp'n Br. 6 n.7 (relying on out-of-circuit cases that treat the *Middlesex* factors as dispositive).)

[7] *See Doe v. Annuci*, No. 14 Civ 2953 (PAE), 2015 WL 4393012, at *18 (S.D.N.Y. July 15, 2015); *Cicero v. Olgiati*, 410 F. Supp. 1080, 1090 (S.D.N.Y. 1976).

Dated: May 14, 2018
New York, New York

| | |
|---|---|
| Issa Kohler-Hausmann<br>Attorney at Law<br>Yale Law School*<br>127 Wall Street<br>New Haven, CT 06511<br>(347) 856-6376<br>Email: issa.kohler-hausmann@yale.edu<br>* This document has been prepared by someone affiliated with Yale Law School, but does not purport to present the school's institutional views, if any.<br><br>Avery Gilbert<br>Attorney at Law<br>15 Shatzell Avenue<br>Suite 232<br>Rhinecliff, New York 12574<br>(845) 380-6265<br>Email: avery@agilbertlaw.com<br><br>*Co-counsel for Plaintiffs* | CRAVATH, SWAINE & MOORE LLP,<br>By:  /s/ Antony L. Ryan<br>    Antony L. Ryan<br>    Damaris Hernández<br>    Worldwide Plaza<br>    825 Eighth Avenue<br>    New York, NY 10019<br>    (212) 474-1000<br>    Email: aryan@cravath.com<br>    Email: dhernandez@cravath.com<br><br>*Counsel for Plaintiffs* |