UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
CARLOS FLORES, LAWRENCE BARTLEY, DEMETRIUS
BENNETT, L'MANI DELIMA, EDGARDO LEBRON and
ANTONIO ROMAN, DONTAE QUINONES, and SHAROD
LOGAN, on behalf of themselves and all others similarly
situated,

                              Plaintiffs,                18-CV-2468 (VB) (JCM)

           v.

TINA M. STANFORD, as Chairwoman of the New York
State Board of Parole, et al,

                              Defendants.
------------------------------------------------------------------------x

# DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF
# THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

                                          BARBARA D. UNDERWOOD
                                          Attorney General of the
                                           State of New York
                                          <u>Attorneys for Defendants</u>
                                           28 Liberty Street
                                           New York, New York 10005
                                           (212) 416-6185

JEB HARBEN
Assistant Attorney General
 <u>of Counsel</u>

**TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................................... i
TABLE OF AUTHORITIES ................................................................................................... ii
PRELIMINARY STATEMENT ...............................................................................................1
ARGUMENT .............................................................................................................................3
      I.     DEFENDANTS ARE ENTITLED TO ABSOLUTE IMMUNITY .......................3
      II.    PLAINTIFFS FAIL TO STATE AN EIGHTH AMENDMENT CLAIM ..............3
      III.   PLAINTIFFS FAIL TO STATE A FOURTEENTH AMENDMENT DUE PROCESS CLAIM BECAUSE PLAINTIFFS HAVE NO LIBERTY INTEREST IN PAROLE ........................................................................................8
      IV.   PLAINTIFFS' SIXTH AMENDMENT RIGHT TO JURY CLAIM FAILS ........10
CONCLUSION .......................................................................................................................11

# TABLE OF AUTHORITIES

**CASES**                                                                                              **Page(s)**

Apprendi v. New Jersey,
    530 U.S. 466 (2000) ..........................................................................................................10

Barna v. Travis,
    239 F.3d 169 (2d Cir. 2001) (per curiam) ........................................................................8

Billiteri v. U.S. Bd. of Parole,
    541 F.2d 938 (2d Cir. 1976) ........................................................................................7, 10

Bowling v. Director, VDOC,
    No. 17-CV-00142, 2018 WL 521592 (W.D. Va. Jan. 23, 2018) .........................................6

Fuller v. Evans,
    586 Fed. Appx. 825 (2d Cir. 2014) ....................................................................................8

Graham v. Florida,
    560 U.S. 48 (2010) .................................................................................................... passim

Graziano v. Pataki,
    689 F.3d 110 (2d Cir. 2012) ............................................................................................1, 8

Hawkins v. New York State Dep't of Corrections and Community Supervision,
    140 A.D.3d 34 (N.Y. App. Div. 2016) ...............................................................................5

Hayden v. Keller,
    134 F. Supp. 3d 1000 (E.D.N.C. 2015) ..............................................................................4

Miller v. Alabama,
    132 S. Ct. 2455 (2012) ............................................................................................. passim

Montero v. Travis,
    171 F.3d 757 (2d Cir. 1999) .............................................................................................10

Montgomery v. Louisiana,
    136 S. Ct. 718 (2016) ............................................................................................... passim

Pulliam v. Allen,
    104 S. Ct. 1970 (1984) .....................................................................................................10

Rolle v. Shields,
    No. 16-CV-2487, 2016 WL 3093898 (E.D.N.Y. June 1, 2016), aff'd, No. 16-
    2307, 2017 WL 6759305 (2d Cir. Apr. 26, 2017) ..............................................................3

Victory v. Pataki,
    814 F.3d 47 (2d Cir. 2016) ...............................................................................................28

Wersche v. Combs,
    No. 12-CV-1375, 2016 WL 1253036 (W.D. Mich. Mar. 31, 2016) ........................3, 16, 23, 25

**STATE STATUTES**

N.Y. Executive Law § 259-i ............................................................................................... passim

**STATE REGULATIONS**

9 N.Y.C.R.R. § 8002.2 ....................................................................................................... passim

New York State Board of Parole Chairwoman Stanford and Commissioners Smith, Crangle, Alexander, Coppola, Agostini, Davis, Shapiro, Berliner, Cruse, Drake, and Demosthenes (collectively, the "Board"), each sued for injunctive and declaratory relief in their official capacities, submit this reply memorandum of law in support of their motion to dismiss the Second Amended Complaint ("Compl."). [ECF No. 110.]

## PRELIMINARY STATEMENT

Despite the Second Circuit's (and Supreme Court's) holdings that "[prisoners] have no liberty interest in parole," Graziano v. Pataki, 689 F.3d 110, 114 (2d Cir. 2012) (quotations and citations omitted), Plaintiffs' lawsuit seeks to create a plethora of new rights concerning parole proceedings in New York for Minor Offenders, none of which are constitutionally mandated. Graham v. Florida, 560 U.S. 48 (2010), Miller v. Alabama, 132 S. Ct. 2455 (2012), and Montgomery v. Louisiana, 136 S. Ct. 718 (2016), do not dictate the results requested, and the handful of district court decisions from other jurisdictions referenced by Plaintiffs deal with parole systems far different than New York's and, in any event, are not binding on this Court. Under the guise of these decisions, Plaintiffs seek a massive overhaul and rewriting of New York's system for determining parole, but as one court noted, none of these decisions were "intended to upend parole systems," Wersche v. Combs, No. 12 Civ.1375, 2016 WL 1253036, at *4 (W.D. Mich. Mar. 31, 2016), app. vol. dismiss., No. 16-1453, 2017 WL 4546625 (6th Cir. 2017), as Plaintiffs seek to do here to New York's parole system. A system that the record in this action demonstrates regularly grants Minor Offenders parole, unlike the parole systems referenced in the district court decisions cited by Plaintiffs in which Minor Offenders were rarely, if ever, granted parole.

Here, incredibly, Plaintiffs argue that New York's parole system creates *de facto* life sentences for Minor Offenders. Pl. Opp. at 2. But this is demonstrably false, as is evidenced by the

record here in which five of the eight named Plaintiffs in this case, filed only eight months ago, have been granted parole. Indeed, Plaintiffs have had to amend their pleadings twice because their named Plaintiffs no longer had live claims after being granted parole. While Plaintiffs may seek to infer that these grants of parole were due to this lawsuit, a more logical explanation is that Board members have been following 9 N.Y.C.R.R. § 8002.2(c), enacted September 27, 2017, and have been increasingly diligent in considering youth and subsequent maturity relevant to Minor Offenders. As the Court in Wersche noted, Graham and its progeny "give[] the State primary responsibility for determining how to provide [Minor Offenders with an opportunity for parole]," 2016 WL 1253036, at * 4, which is what New York did in enacting 9 N.Y.C.R.R. § 8002.2(c),

Finally, Plaintiffs also appear to seek to have federal courts in New York serve as *de facto* Article 78 courts in any parole case involving a Minor Offender, effectively demanding that federal courts determine whether a given Minor Offender should be granted parole, and have argued that it is unconstitutional for the Board to exercise discretion and apply its judgment in denying parole based on its assessment of a Minor Offender's demeanor and statements made at a parole interview, the facts and circumstances of the crime committed, and, seemingly, a Minor Offender's poor prison disciplinary history - if the Minor Offender improved before his last parole interview.[1] In fact, Plaintiffs have argued that it is unconstitutional for the Board to find, for a Minor Offender, that under Executive Law § 259-i(2)(c)(A) that release would be "incompatible with the welfare of society" or would "so deprecate the seriousness of the crime as to undermine respect for law,"

---

[1] For example, Plaintiff Quinones, who Plaintiffs seem to infer is a model inmate, in addition to serving a 15-to-life sentence for Second Degree Murder and a separate 1 ½ to 4 ½ year sentence for Third Degree Weapons Possession, is also serving a 3 ½ to 7 year sentence for First Degree Promoting Prison Contraband committed in Washington County, and a 2 ½ to 5 year sentence for First Degree Attempted Assault (both crimes occurred when Plaintiff was over 18 and incarcerated). See Kiley Decl., Exs. M at 2 - 5 and N.

(Pl. Opp. at 10-11), a position that finds no support in any applicable precedent. Plaintiffs go so far as to seek to have this Court determine that various prison disciplinary charges for one named Plaintiff were unwarranted, even arguing that a civilian employee was "at fault," and that the Board should not have considered them. Pl. Opp. at 15. This is precisely the kind of micromanagement of state administrative decisions that federal courts should avoid.

**ARGUMENT**

I. **DEFENDANTS ARE ENTITLED TO ABSOLUTE IMMUNITY**

As previously argued, when Board Commissioners make parole release decisions, they perform "a judicial function." See Exec. Law § 259-i(5); see also Montero v. Travis, 171 F.3d 757, 761 (2d Cir. 1999) ("[P]arole board officials, like judges, are entitled to absolute immunity . . . ."). In its decision denying Plaintiffs' motion for a preliminary injunction, the Court cited Pulliam v. Allen, 104 S. Ct. 1970 (1984), to reject Defendants' absolute immunity argument. But the Court did not address that in amending 42 U.S.C. § 1983, Congress superseded Pulliam v. Allen, 104 S. Ct. 1970 (1984), and extended absolute immunity of judicial officers to bar injunctive relief and, in a summary order, the Second Circuit has also barred declaratory relief pursuant to this amendment. See Guerin v. Higgins, 8 Fed. Appx. 31 (2d Cir. 2001) (summary order); accord Rolle v. Shields, No. 16 Civ. 2487, 2016 WL 3093898, at *2 (E.D.N.Y. June 1, 2016), aff'd, No. 16-2307, 2017 WL 6759305 (2d Cir. Apr. 26, 2017). In sum, despite Plaintiffs' attempt to frame injunctive relief as declaratory relief, the relief sought is still barred by absolute immunity.

II. **PLAINTIFFS FAIL TO STATE AN EIGHTH AMENDMENT CLAIM**

Graham, Miller, and Montgomery involved the imposition of criminal sentences, not parole determinations, and the reasoning of those cases does not support the Eighth Amendment's application to parole determinations. In Montgomery, the Court barred "life *without* parole . . . for

3

all but the rarest of juvenile offenders, those whose crime reflects permanent incorrigibility," 136 S. Ct. at 734 (emphasis added), noting "[a] State may remedy a [life sentence without the possibility of parole given to a Minor Offender] by *permitting juvenile homicide offenders to be considered for parole*, rather than by resentencing them . . . . [the] *opportunity* for release will be afforded to those who demonstrate the truth of Miller's central intuition—that children who commit even heinous crimes are capable of change." Id. at 736 (emphasis added).

Effectively conceding that Graham, Miller, and Montgomery do not specifically dictate the massive overhaul of New York's parole system Plaintiffs seek, Plaintiffs cite to non-binding district court decisions outside the Second Circuit, holding that certain state parole systems may be incompatible with this Supreme Court precedent. Even if these Supreme Court cases were applicable to parole, which Defendants contest, these district court cases are distinguishable.

In Hayden v. Keller, 134 F. Supp. 3d 100, 102-05 (E.D.N.C. 2015), for example, North Carolina parole officials, who each voted on in excess of 2,000 parole cases each month (many multiples of the number of cases that Plaintiffs allege New York parole commissioners decide), were not instructed to consider Minor Offender status, and only a tiny fraction of Minor Offenders were ever granted parole. From 2011 – 2015, of 158 eligible Minor Offenders, only *one* received parole, making their sentences virtually *de facto* life sentences without parole. The record here demonstrates that Minor Offenders in New York are granted parole far more frequently. And, while Hayden (which denied the injunctive relief sought in deciding the motion to dismiss) noted that "juvenile offenders' parole reviews demand more procedural protections," id. at 1010, in North Carolina, there was *no* opportunity "to be heard on the question of maturity and rehabilitation," id., whereas in New York, this is now mandated, among other things, by 9 N.Y.C.R.R. § 8002.2.

In Brown v. Precythe, No. 17 Civ. 4082, 2017 WL 4980872, at *4 (W.D. Mo. Oct. 31, 2017), only 10% of the Minor Offenders considered for parole following Montgomery were granted parole, also far fewer than are granted parole in New York, and the court voiced very specific concerns about the conduct of one parole official involved.

Similarly, in Md. Restorative Justice Initiative v. Hogan, No. 16 Civ. 1021, 2017 WL 467731, at *1, 27 (D. Md. Feb. 2, 2017), of over 200 Minor Offenders eligible, *none* were granted parole, strengthening the argument that Maryland was implementing *de facto* life without parole sentences. Moreover, Maryland employed an executive clemency-type system, not parole.

In Greiman v. Hodges, 79 F. Supp. 3d 933 (S.D. Iowa 2015), in which the plaintiff was serving a life sentence for kidnapping, not murder, the court denied the defendants' motion to dismiss because there was no evidence in the record that Iowa parole officials had considered the "[p]laintiff's age at the time of the offense, as well as an evaluation of his maturation and rehabilitation since that time." 79 F. Supp. 3d at 943. Nor did Iowa's parole regulation require parole officials to make such a consideration. The Court rejected the argument that a review of the "totality of the circumstances" was sufficient in this regard. Id. At most, Greiman did no more than Hawkins v. New York State Dep't of Corrections and Community Supervision, 140 A.D.3d 34 (N.Y. App. Div. 2016) in this regard; namely, it required parole officials to consider youth at the time of the crime and subsequent maturity, issues that Plaintiffs concede are addressed by 9 N.Y.C.R.R. § 8002.2 and concede were addressed by the Board after the enactment of 9 N.Y.C.R.R. § 8002.2. Plaintiffs here simply dispute whether the Board gave appropriate weight to those issues when making its determinations, something that was not at issue in Greiman.

Finally, Plaintiffs cite Atwell v. State, 197 So.3d 1040, 1048 (Fla. 2016), an irrelevant Florida state court case involving parole eligibility in *140 years*, "decades beyond a natural

lifespan," and a parole system where only approximately .5% of eligible inmates were granted parole. Thus the case concerned a *de facto* life sentence for a Minor Offender.

Plaintiff ignored at least one federal court decision that did not support their argument, Jackson v. Bennett, No. 17 Civ. 166, 2018 WL 2123624, at \*\* 2-3 (W.D. Va. May 8, 2018), which found that Graham and its progeny did not apply to that Minor Offender's challenges to his parole denials over the prior decade.

Here, New York's sentencing laws already require that Minor Offenders be considered for parole. Thus, the Supreme Court's concerns about making such irrevocable judgments at the time of sentencing are not present here, and the Eighth Amendment is not implicated. See id.; Bowling v. Director, VDOC, No. 17 Civ. 142, 2018 WL 521592, at \*3 (W.D. Va. Jan. 23, 2018) (rejecting an Eighth Amendment challenge to a parole denial because Plaintiff's "sentence was not life-without-parole; and [Plaintiff] is not entitled to relief under the Eighth Amendment because Miller and Graham do not apply."). And New York's parole regulations now require the Board to consider youth at the time of the offense and subsequent maturity. Even if Miller and its progeny are applicabile to parole proceedings, no decision cited by Plaintiff holds that these factors are the *only* factors that parole officials may consider, which is what Plaintiffs are arguing here, and there is no plausible allegation that these factors are now being ignored by the Board.

Moreover, even if Miller, et al. are extended to parole proceedings and not just sentencing, at most they require only a "realistic opportunity" (Graham, 560 U.S. at 75) for Minor Offenders to be granted parole and for "their hope for some years of life outside prison . . . be restored." Montgomery, 136 S. Ct. 736-37. None of the decisions dictate that Minor Offenders must be

released when first potentially eligible for parole,[2] nor do they dictate that parole officials are not allowed to look at the totality of their behavior during incarceration, the facts and circumstances of their crimes, their adjustment in prison, or statements of victims.

This lawsuit raises the specter of federal courts being asked to intervene in the roughly 12,000 parole determinations made in New York each year. Compl. ¶ 184. Indeed, Plaintiffs do not limit this to Minor Offenders, but all offenders, Pl. Opp. at 22-23, in effect demanding that federal courts be available to "second guess" such decisions. Allie v. Cunningham, No. 08 Civ.11082, 2009 WL 1883258, at * 4 (S.D.N.Y. June 30, 2009). In fact, Plaintiffs go one step further by asking courts to ignore Article 78 decisions by state courts finding parole denials proper, as is sought here with respect to Plaintiff Quinones.

Finally, Miller, et al. did not address any purported right to counsel, right to experts, or right to confront evidence under the Eighth Amendment (or the Constitution generally), and as previously argued (Def. Mem. at 25-28), no binding precedent has created any such rights. Plaintiff cites to Brown, a non-binding Missouri decision, to argue a right to confrontation and review of underlying evidence in parole proceedings (both in the Eighth and Fourteenth Amendment contexts). But not only has the Second Circuit found that inmates are not guaranteed access to evidence considered by parole officials, see Billiteri v. U.S. Bd. of Parole, 541 F.2d 938, 945 (2d

---

[2] Indeed, the Colorado Court of Appeals in People v. Davis, No. 15CA1713, 2018 WL 3763984 (Col. C. App. Aug. 9, 2018) found that a 40-to-life sentence of a Minor Offender was constitutional and that Colorado's parole system was constitutional because a Minor Offenders youth at the time of the crime and subsequent maturation would be considered. And in Thomas v. McGinley, No. 16 Civ. 5008, 2018 WL 637809 (E.D. Pa. Jan. 30, 2018) a Pennsylvania district court found that a 40-to-life sentence for a Minor Offender who did not commit murder was constitutional. Here, Plaintiff argues that, for example, Plaintiff Delima's 13 years of incarceration for a brutal murder of a child is unconstitutional. Compl. at ¶¶ 47-53.

Cir. 1976), the proceedings in question in Brown were adversarial, whereas, as previously argued the proceedings at issue here were not, which is an important distinction. Def. Mem. at 26-27.

### III. PLAINTIFFS FAIL TO STATE A FOURTEENTH AMENDMENT DUE PROCESS CLAIM BECAUSE PLAINTIFFS HAVE NO LIBERTY INTEREST IN PAROLE

A litigant alleging a due process violation must first demonstrate deprivation of a liberty interest protected by the Due Process Clause and then show that the procedures attendant upon the deprivation were not constitutionally sufficient. Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 459–60 (1989). Plaintiffs' claims here fail because they have no liberty interest in receiving parole. See Victory v. Pataki, 814 F.3d 47, 60 (2d Cir. 2016); Graziano v. Pataki, 689 F.3d 110, 115 (2d Cir. 2012); Barna v. Travis, 239 F.3d 169, 170-71 (2d Cir. 2001) (per curiam)

Contrary to Plaintiffs' assertions, in Fuller v. Evans, 586 Fed. Appx. 825, 826-27 (2d Cir. 2014) (summary order), cert. den., 135 S. Ct. 2807 (2015), the Second Circuit rejected, albeit by summary order, a claim that the 2011 amendments created a liberty interest, noting that "[a]ppellants have pointed to no specific language in any version of the statute that might create a legitimate expectancy of release." 586 Fed. Appx. at 827. Put simply, a liberty interest is not created by state procedures or guidelines that guide a parole board's exercise of discretion, but only by a state provision that establishes a legitimate expectancy of release. See Barna, 239 F.3d at 171. No such provision is present here.[3]

Plaintiffs' opposition asserts that Defendants did not move to dismiss Plaintiffs' claim that the Board's procedures allegedly provide insufficient due process. But throughout Defendants'

---

[3] Plaintiff cites to the remand of the *sua sponte* dismissal in Linares v. Annucci, 710 Fed. Appx. 467, 470 (2d Cir. 2017), by a different Second Circuit panel than Fuller, to further consider whether the 2011 Amendments to the Executive Law may create a liberty interest, after that argument was first raised on appeal and had not been addressed by the district court in dismissing the action. But the plaintiff in that case voluntarily dismissed the action (Linares v. Annucci, No 15 Civ. 9574 (S.D.N.Y.) [ECF No. 19]), so no further inquiry appears to have been conducted.

8

motion to dismiss it was argued that the Board's procedures are constitutional. See, e.g., Def. Mem at 19 (New York's parole statutes and regulations comply with constitutional requirements), 25 (same), 27 (no due process right to review evidence considered by parole officials), 27 (no right to counsel), 28 and n. 17 (Board not constitutionally required to have every panel member fully read parole file), 28 (not required to provide list of requirements for potential future release), and 28 (experts not constitutionally required). Indeed, the same reasoning why the Board's procedures do not violate the Eighth or Sixth Amendment applies to a Fourteenth Amendment analysis.[4]

Finally, Plaintiffs repeatedly assert that the Board provides insufficient time to parole applicants during their interviews, an assertion that was not categorized as a Fourteenth Amendment due process violation in the Second Amended Complaint. See Compl. at ¶ 233-34.[5] Regardless, the testimony referenced is either severely outdated and not relevant to today's Commissioners,[6] or, in the case of Defendant Stanford's testimony, not specific to Minor

---

[4] In their opposition (but not their pleading), Plaintiffs argue that by not receiving all documents that may have been considered by the Board or by a COMPAS analysis, their Fourteenth Amendment rights were violated because they cannot review and challenge any errors in these materials. Pl. Mem. at 24. But according to the pleadings, Plaintiffs Flores, Bartley, Roman, Quinones, and Logan all received favorable COMPAS scores. While Plaintiffs Bennett, Delima, and Lebron did receive partially unfavorable COMPAS scores, Plaintiffs Bennett and Lebron were granted parole, so Plaintiff's argument only potentially applies to Plaintiff Delima. A review of Plaintiff Delima's parole interview (Kiley Decl., Ex. E) makes it clear that he has had numerous disciplinary problems while incarcerated, impacting his COMPAS scores negatively.

[5] While Plaintiffs claim Defendants did not fully move to dismiss their Fourteenth Amendment claim, their opposition appears to improperly supplement that claim by categorizing additional matters as Fourteenth Amendment violations beyond those pled, such as their allegation that interviews are too short and that they must be able to review all underlying documents in order to challenge COMPAS determinations.

[6] The pleadings make several allegations regarding parole procedures "on information and belief," see, e.g., Compl. ¶¶ 191, 197, 198, 200-1, which clearly refer to declarations of prior commissioners [ECF Nos. 70-72] who last served in 1996, 2006, and 2007, respectively, only two of whom served with a current commissioner. Stanford Decl. [ECF No. 85] ¶¶ 16 – 21.

Offenders. Before the Court are interview transcripts of the named Plaintiffs, which demonstrate that the Board thoroughly analyzed their parole application. See Kiley Decl. Exs. In light of these, speculative and conclusory references to interviews of others cannot defeat this motion to dismiss.

## IV. PLAINTIFFS' SIXTH AMENDMENT RIGHT TO JURY CLAIM FAILS

Plaintiffs assert that the Board violates their Sixth Amendment right to a jury, citing Apprendi v. New Jersey, 530 U.S. 466 (2000), and its progeny. This argument appears to assume that any determination by the Board that a Minor Offender is not yet suitable for parole is a *de facto* resentencing requiring trial by jury and a *de facto* imposition of a life sentence without parole. Under Plaintiffs' logic, a Minor Offender could have been found guilty of committing a severe disciplinary infraction immediately before his parole interview and a jury trial would still be required for that fact to be relied upon in denying parole. Apprendi requires no such outcome, nor does it require a jury trial when Commissioners utilize their discretion to deny parole.[7]

There is no basis to equate a parole denial, which is within the authorized sentence and may be reconsidered later, with an irrevocable life sentence in prison or an enhancement of "statutory floor" of a sentence. Here, the Board is not enhancing Plaintiffs' sentences beyond those terms permitted by the sentencing court, namely life in prison with the possibility of parole. Parole denial does not change—or enhance—those sentences. Indeed, Plaintiffs' Apprendi argument would apply not just to Minor Offenders, but any offender denied parole. This is not the law, and Plaintiff cites no decisions that support the use of Apprendi in this manner. Indeed, the Second Circuit held that evidence of unadjudicated and acquitted charges could be considered in revoking parole (which, unlike parole release implicates a liberty interest). See Billiteri, 541 F.2d at 944.

---

[7] Plaintiffs' argument that Defendants did not challenge certain aspects of Plaintiffs' Sixth Amendment claim (Pl. Opp. at 29) is absurd. Defendants argued that Apprendi is inapplicable here for all purposes and that Plaintiffs' right to jury claim in general failed. Def. Mem. at 31 – 33.

10

## **CONCLUSION**

For the reasons above, Defendants respectfully request that this Court grant Defendants' motion to dismiss and grant such other and further relief as this Court deems just and proper.

Dated: New York, New York
       November 20, 2018                    Respectfully submitted,

                                                    BARBARA D. UNDERWOOD
                                                    Attorney General of the
                                                       State of New York

                                                      <u>Attorneys for Defendants</u>
                                                      By:

                                                            */s/Jeb Harben*
                                                      JEB HARBEN
                                                      Assistant Attorneys General
                                                      28 Liberty Street
                                                      New York, New York 10005
                                                      Phone: (212) 416-6185
                                                      Facsimile: (212) 416-6075