UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
CARLOS FLORES, LAWRENCE BARTLEY,
DEMETRIUS BENNETT, L'MANI DELIMA,
EDGARDO LEBRON, ANTONIO ROMAN,
DONTAE QUINONES and SHAROD LOGAN,
on behalf of themselves and all others similarly
situated,

           Plaintiffs,       **OPINION & ORDER**

   -against-             18 Civ. 02468 (VB)(JCM)

TINA M. STANFORD, as Chairwoman of the New
York State Board of Parole; WALTER W. SMITH,
As Commissioner of the New York State Board of
Parole; SALLY THOMPSON, as Commissioner of
the New York State Board of Parole; JOSEPH P.
CRANGLE, as Commissioner of the New York
State Board of Parole; ELLEN E. ALEXANDER,
as Commissioner of the New York State Board of
Parole; MARC COPPOLA, as Commissioner of the
New York State Board of Parole; EDWARD
SHAKEY, as Commissioner of the New York State
Board of Parole; TANA AGOSTINI, as
Commissioner of the New York State Board of
Parole; CHARLES DAVIS, as Commissioner of the
New York State Board of Parole; CAROL SHAPIRO,
As Commissioner of the New York State Board of
Parole; ERIK BERLINER, as Commissioner of the
New York State Board of Parole; OTIS CRUSE, as
Commissioner of the New York State Board of Parole;
TYCEE DRAKE, as Commissioner of the New York
State Board of Parole; and CARYNE DEMOSTHENES,
as Commissioner of the New York State Board of
Parole,

           Defendants.
----------------------------------------------------------------X

     Before the Court is a motion by Plaintiffs Carols Flores, Lawrence Bartley, Demetrius

Bennett, L'Mani Delima, Edgardo Lebron, Antonio Roman, Dontae Quinones and Sharod

Logan's (collectively, "Plaintiffs") to compel Defendants, the New York State Board of Parole

("BOP") and individual BOP Commissioners ("Commissioners") (collectively, "Defendants"), to produce certain victim impact and community opposition statements with only the personal identifying information of the sender redacted ("Motion"). (Docket No. 235; *see also* Docket No. 236).  Defendants opposed the Motion, (Docket No. 240), and Plaintiffs replied, (Docket No. 241).  For the reasons that follow, Plaintiffs' Motion is granted.

## I.   BACKGROUND

This dispute concerns the discoverability of victim impact and community opposition statements in Plaintiffs' and certain prospective plaintiffs'[1] ( "Prospective Plaintiffs") institutional parole files that Defendants have withheld from production or heavily redacted on confidentiality grounds ("Withheld Materials"). (*See* Docket Nos. 236 at 8-9; 240 at 2).

Plaintiffs are individuals who received indeterminate life sentences with the possibility of parole based on crimes they committed when they were under the age of eighteen. (Docket No. 110 ¶¶ 1-2).  Plaintiffs bring this putative Section 1983 class action on behalf of themselves and all others similarly situated seeking a declaratory judgment that Defendants' parole practices and policies routinely deny them a meaningful and realistic opportunity for release and due process in violation of the Eighth and Fourteenth Amendments. (*See id.* ¶¶ 1-3, 34-36, 65-67, 137-46).  Among other things, Plaintiffs allege that rather than considering juvenile offenders' "demonstrated maturity and rehabilitation," as required by the Constitution, Defendants deny parole based on the seriousness of the crime committed, which is often reflected in victim impact and community opposition statements to which Plaintiffs lack access. (*Id.* ¶¶ 23, 26, 67, 77, 91, 99-102, 137-46, 152-53, 167, 224-35).  Furthermore, Defendants do so even when there is "clear evidence of rehabilitation and maturity." (*Id.* ¶ 153).

---

[1] Plaintiffs have represented to the Court and defense counsel that they may submit a third amended complaint adding certain individuals as named plaintiffs. (*E.g.*, Docket No. 231).

In her deposition on November 18, 2021, Defendant Chairwoman Tina M. Stanford ("Ms. Stanford") testified that when commissioners render parole determinations, victim opposition to a juvenile offender's release is sometimes "given more weight" than the offender's demonstrated maturity and rehabilitation. (Docket No. 236-1 at 3:3-5:19).  In addition, due to the confidential nature of victim impact statements, the BOP's "practice" is to "require[]" commissioners "to not even divulge the existence of victim opposition in the[ir] decision[s]," even when such opposition is "more significant" than any other reason for denial of parole. (*Id.* at 7:6-12, 10:10-21).  At least three other deponents concurred that commissioners rely on victim impact and community opposition statements to assess the extent of the harm caused by particular offenders, and that in at least one instance, parole was denied because of those materials.[2] (Docket Nos. 236-2 at 3:12-4:23; 236-3 at 4:12-5:4; 236-4 at 4:12-7:24).

Plaintiffs requested "all documents submitted in opposition to each Named Plaintiff's release" in their First Set of Requests for Production ("Plaintiffs' First RFPs"). (Docket No. 236 at 8).  Although Defendants asserted that they completed their productions in response to Plaintiffs' First RFPs on July 15, 2021, their productions contained over 850 pages of redactions from the named Plaintiffs' institutional files. (*Id.*; *see also* Docket No. 236-5).  To better understand what information was redacted, Plaintiffs requested a privilege log and redactions list on October 22, 2021. (Docket Nos. 236 at 8; 236-5).

On November 12, 2021, Defendants made another production in response to an additional request by Plaintiffs for the institutional files of the Prospective Plaintiffs. (Docket No. 236 at 8).

---

[2] Defendants note that commissioners sometimes rely on victim statements made publicly at sentencing, which are reflected in the sentencing minutes in the subject offender's parole file, and are accessible to such offenders. (Docket No. 240 at 4).  Defendants assert that contrary to Plaintiffs' belief, commissioners do not glean from victim or community statements "facts" about the underlying crime that are not reflected in the rest of the parole file. (*Id.* at 3-4; *see also* Docket No. 236 at 14-15).

The production contained over 400 fully redacted pages of what appeared to be victim impact statements, as well as a number of community opposition letters with the author's personal identifying information redacted. (*Id.* at 8-9.  Upon comparison of that production with Defendants' earlier productions, Plaintiffs determined that Defendants either withheld such community opposition letters from their earlier productions, or produced them in fully redacted form. (*Id.*).

On November 16, 2021, Defendants requested leave from the Court to depose the Prospective Plaintiffs in light of the fact that they were currently incarcerated. (Docket No. 229). In a response letter dated November 18, 2021, Plaintiffs stated that they did not object to such depositions. (Docket No. 231)  However, Plaintiffs explained that based on Defendants' redaction list, they believed the redactions in both sets of productions covered victim impact or community opposition statements, and requested the Court to direct Defendants to produce all such statements with redactions exclusively applied to the personal identifying information of victims. (*Id.*).  Plaintiffs further requested that such production be made in advance of the Prospective Plaintiffs' depositions so that they could adequately prepare for those proceedings. (*Id.*).  Plaintiffs indicated that they would agree to attorneys' eyes only ("AEO") designations for any statements implicating safety concerns for particular victims. (*Id.*).

At a conference the following day, the Court held oral argument on this issue. Defendants objected to producing the requested statements in unredacted form based on certain confidentiality provisions in New York's Executive Law and BOP regulations. *See generally* N.Y. Exec. Law § 259-i(2)(c)(B); N.Y. Comp. R. & Regs., tit. 9 § 8002.4(a), (e).  Defendants asserted that the subject redactions are especially necessary to preserve the confidentiality of victim impact and community opposition statements submitted with regard to Prospective

Plaintiff Joshua Horein ("Mr. Horein"), who murdered and raped an adolescent girl in a small

town. (*Cf.* Docket No. 240 at 4-5).  Defendants explained that numerous statements with highly

personal details were submitted by both family and neighbors, and due to the close-knit nature of

the community, producing the substance of these statements in unredacted form would pose

safety concerns because doing so would reveal the townspeople's identities.  At the conference,

the Court denied Plaintiffs' request for immediate production without prejudice, finding

production of the documents unnecessary for the depositions to go forward, and set a briefing

schedule for the instant motion.  The parties have attempted to confer in good faith to resolve this

dispute, to no avail. (Docket No. 236 at 9).

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(b) ("Rule 26(b)"), "[p]arties may obtain

discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and

proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).  To evaluate what information is

discoverable, the court "consider[s] the importance of the issues at stake in the action, the

amount in controversy, the parties' relative access to relevant information, the parties' resources,

the importance of the discovery in resolving the issues, and whether the burden or expense of the

proposed discovery outweighs its likely benefit." (*Id.*).

When moving to compel discovery, the discovering party "has the burden of

demonstrating that the information sought is relevant to the subject matter of the pending

action." *United States v. Int'l Bus. Machines Corp.*, 66 F.R.D. 215, 218 (S.D.N.Y. 1974); *see

also Citizens Union of City of New York v. Attorney Gen. of New York*, 269 F. Supp. 3d 124, 139

(S.D.N.Y. 2017).  "Once relevance has been shown, it is up to the responding party to justify

curtailing discovery." *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 284 F.R.D. 132,

135 (S.D.N.Y. 2012) (quoting *Trilegiant Corp. v. Sitel Corp.*, 275 F.R.D. 428, 431 (S.D.N.Y.

2011)) (internal quotations omitted).  District courts have broad discretion to manage the scope

of discovery and decide motions to compel. *See Mason Tenders Dist. Council of Greater N.Y. v.*

*Phase Constr. Servs., Inc.*, 318 F.R.D. 28, 36 (S.D.N.Y. 2016); *see also Grand Cent. P'ship, Inc.*

*v. Cuomo*, 166 F.3d 473, 488 (2d Cir. 1999).

Furthermore, where, as here, there is federal question jurisdiction, "courts consistently

have held that [any] asserted privileges are governed by the principles of federal law." *See von*

*Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 141 (2d Cir. 1987), *cert. denied sub. nom.,*

*Reynolds v. von Bulow by Auersperg*, 481 U.S. 1015 (1987); *see also In re Zyprexa Prod. Liab.*

*Litig.*, 254 F.R.D. 50, 52 (E.D.N.Y. 2008), *aff'd*, 2008 WL 4682311 (E.D.N.Y. Oct. 21, 2008)

("It is axiomatic that state privilege laws do not govern in federal question cases."); Fed. R. Evid.

501.  In situations where there is no comparable privilege under federal law, in the interest of

comity, the court "may . . . consider[]" state-created privileges, as long as the interests they

protect "do not conflict with the interests of the federal court." *See Bianchi v. Green*, Civ. No.

1:18-CV-619 (GLS/DJS), 2018 WL 10667434, at *3 (N.D.N.Y. Oct. 4, 2018); *see also Sines v.*

*Yiannopoulos*, 20 Misc. 241 (KPF), 2020 WL 6058279, at *4 (S.D.N.Y. Oct. 14, 2020).

## III.   DISCUSSION

Plaintiffs argue that the victim impact and community opposition statements must be

produced without redactions—except for redactions of the personal identifying information of

the sender—because they are (1) highly relevant to their constitutional claims; and (2) not

protected by federal privilege law. (Docket No. 236 at 10-17; *see also* Docket No. 241 at 3-4, 7-

10).  Plaintiffs further argue that to the extent the Court considers state law, Defendants cannot

make a "substantial threshold showing" of harm that would result from disclosure, and the Court

should rely on the confidentiality provisions in the Executive Law—which exclusively protect personal identifying information—rather than the BOP regulations. (Docket No. 236 at 11-14, 17-21).  Moreover, Plaintiffs assert that to the extent the Court follows the BOP regulations, they only apply to victim impact statements, so community opposition letters from persons other than victims and their immediate families must be disclosed in their entirety with the exception of personal identifying information. (Docket Nos. 236 at 21-22; 241 at 10-11).

Defendants respond that the substance of the victim impact and community opposition statements is irrelevant and unnecessary for Plaintiffs to succeed on their claims. (Docket No. 240 at 7-8).  They further assert that the Court should uphold the state laws' promise of confidentiality on which victims relied, to respect such victims' fears of retaliation and safety, and to protect public confidence in these laws. (*Id.* at 2-7).  Defendants also maintain that the Court should abstain from resolving any conflict between the Executive Law and BOP regulations, and community opposition letters from persons affected by the crime are protected from disclosure by the BOP regulations. (*Id.* at 8-10).

A.     **Relevance**

The Court first considers the relevance of the discovery Plaintiffs wish to compel. *See Int'l Bus. Machines*, 66 F.R.D. at 218.  According to Plaintiffs, the Withheld Materials are highly relevant because they constitute specific evidence of their allegations that the Commissioners "often deny parole based on . . . the depravity of the crime of conviction" instead of applying the maturity and rehabilitation standard mandated by the Eighth Amendment – sometimes, despite "clear evidence" of rehabilitation. (Docket Nos. 236 at 14; 241 at 8-9; *see also* Docket No. 101 ¶¶ 224-28).  Moreover, Ms. Stanford's admitted practice of withholding the fact that commissioners relied on victim impact statements from parole decisions is relevant to Plaintiffs'

assertion that Defendants systematically violated Plaintiffs' due process rights under the Fourteenth Amendment. (*See* Docket No. 236 at 15; *see also* Docket Nos. 101 ¶¶ 228-35; 236-1 at 7:6-12, 10:10-21).  Although Defendants argue that the constitutionality of the BOP's parole determinations is "a straight-forward legal issue," (Docket No. 240 at 3), Plaintiffs maintain that they require such evidence because they are challenging the application of the relevant constitutional principles and state laws to "juvenile lifers," rather than any facial unconstitutionality of the state laws, (Docket No. 241 at 8).

      The Court agrees that the Withheld Materials are relevant to Plaintiffs' constitutional claims.  "The essence of an 'as applied' challenge . . . is a claim that the manner in which a statute or regulation was applied to a plaintiff in particular circumstances violated the Constitution." *Almengor v. Schmidt*, 692 F. Supp. 2d 396, 397 (S.D.N.Y.), *aff'd sub nom. Schain v. Schmidt*, 396 F. App'x 713 (2d Cir. 2010).  Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense." *Doe v. Sarah Lawrence Coll.*, 19 Civ. 10028 (PMH)(JCM), 2021 WL 197132, at *3 (S.D.N.Y. Jan. 20, 2021) (quoting *State Farm Mut. Auto. Ins. Co. v. Fayda*, 14 Civ. 9792 (WHP) (JCF), 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015), *aff'd*, 2016 WL 4530890 (S.D.N.Y. Mar. 24, 2016)).  To satisfy this standard, "the moving party must articulate a concrete 'linkage between the discovery sought and the [claims or] defenses asserted in the case.'" *Edmondson v. RCI Hosp. Holdings, Inc.*, 16-CV-2242 (VEC), 2018 WL 4112816, at *1 (S.D.N.Y. Aug. 29, 2018) (quoting *Liberty Mut. Ins. Co. v. Kohler Co.*, No. CV 08-867 (SJF) (AKT), 2010 WL 1930270, at *2 (E.D.N.Y. May 11, 2010)).  However, evidence need not be admissible in order to be discoverable. *See* Fed. R. Civ. P. 26(b)(1).  Thus, Defendants'

contention that the documents are unnecessary, or would be unusable at trial if marked AEO, misstates the relevance standard for discovery purposes. (Docket No. 240 at 3, 7-8).

Here, the Second Amended Complaint ("SAC") specifically alleges that Defendants' Eighth and Fourteenth Amendment violations stem from, among other things, (1) commissioners' excessive reliance on victim impact and community opposition statements instead of rehabilitative capacities when making parole determinations for juvenile offenders; and (2) their nondisclosure of these statements, which denies such offenders an opportunity to meaningfully challenge the basis of their parole decisions. (Docket No. 110 ¶¶ 1-3, 137-46, 152-53, 167, 224-35).  Therefore, a central component of Plaintiffs' argument is that Defendants' method of weighing these statements effectively ignores the considerations the Constitution requires for juvenile offenders who are up for parole.

Plaintiffs' request for these materials does not constitute an impermissible fishing expedition. *See Liberty Mut. Ins. Co.*, 2010 WL 1930270, at *2 (citing *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir. 1974)).  Extensive deposition testimony confirms the importance of victim impact and community opposition statements in commissioners' considerations. (Docket Nos. 236-1 at 3:3-5:19; 236-2 at 3:12-4:23; 236-3 at 4:12-5:4; 236-4 at 4:12-7:24).  It also buttresses Plaintiffs' contention that the BOP's practice is to withhold commissioners' reliance on these materials from written parole decisions, which provides further support to Plaintiffs' due process claims. (Docket No. 236-1 at 7:6-12, 10:10-21).  A review of such materials, combined with the reasoning in the relevant parole decisions, could help Plaintiffs substantiate their claims that Defendants routinely deny parole based on the seriousness of the crime instead of demonstrated maturity and rehabilitation, and thus, engage in a policy or practice that violates Plaintiffs' constitutional rights.  For example, evidence that the victim impact statements on

which Defendants relied focus on the depravity of particular plaintiffs' underlying crimes,

combined with other evidence of such plaintiffs' rehabilitative capacities, could support an

inference that Defendants ignore the requisite constitutional standards when rendering juvenile

offenders' parole determinations.[3]  Thus, the Withheld Materials fall within the bounds of

relevance. *See, e.g.*, *Shannon v. Liberty Mut. Grp. Inc.*, 3:20-CV-1192 (RNC), 2021 WL

2644742, at *18 (D. Conn. June 28, 2021) ("[C]ourts in this circuit have held that circumstantial

evidence revealing discriminatory practices is relevant and appropriate for discovery purposes.");

*Casaccia v. City of Rochester*, 17-CV-6323 (MAT/MJP), 2020 WL 1042149, at *4 (W.D.N.Y.

Mar. 4, 2020), *reconsideration denied*, 2020 WL 2833008 (W.D.N.Y. June 1, 2020) (finding

training records of officer defendants "involved in the allegedly unconstitutional conduct"

discoverable as relevant to plaintiffs' *Monell* claims against municipality); *Hisp. Leadership*

*Fund, Inc. v. Walsh*, No. 1:12-CV-1337 (MAD/TWD), 2014 WL 12586844, at *3 (N.D.N.Y.

June 9, 2014) (ordering discovery of documents as "necessary to prove . . . defense that" New

York state's statutory contribution limits "are constitutional" in light of plaintiff's as-applied

challenge to the statute).  Consequently, Plaintiffs have satisfied their burden. *See Int'l Bus.*

*Machines*, 66 F.R.D. at 218.

**B.    Confidentiality, Safety and Privacy Concerns**

Defendants argue that although "federal case law [does not] outlin[e] a specific privilege"

that applies to the Withheld Materials, they should not be disclosed to protect current and future

victims' expectations of confidentiality and privacy grounded in New York law as well as their

safety and "personal feelings of . . . well being." (Docket No. 240 at 2-4).  Although Plaintiffs

---

[3] This is so irrespective of whether the commissioners rely on the factual components of such statements as they relate to the underlying crime, or on the "opinions" therein "about the harm [the victims] have suffered and their views on release," as Defendants assert. (Docket No. 240 at 3); *see also supra* n.2.

argue that Defendants cannot articulate a specific harm that would result from disclosure,

(Docket No. 236 at 13), Defendants maintain that these concerns fit that description, especially

with regard to Mr. Horein and the Plaintiffs, who have been released on parole and could

recidivate. (Docket No. 240 at 4-5 n.1).  Defendants further argue that BOP regulations mandate

keeping confidential entire statements from victims as well as others in the community beyond

their immediate families. (*Id.* at 8-10)  Plaintiffs respond that (1) the state laws do not make any

absolute promise of confidentiality; (2) most personal safety concerns will be alleviated by

redacting personal identifying information; (3) they are willing to designate the subject

statements from Mr. Horein's file as AEO; and (4) they are willing to negotiate redactions over

personal identifying information where more than one family member submits a statement on a

case-by-case basis. (Docket No. 241 at 3-12).  The Court agrees that the privacy and safety

concerns here are important, and there are compelling reasons to maintain their confidentiality.

However, these concerns are outweighed by Plaintiffs' need for the documents to pursue this

civil rights action and the Court can issue an order that requires the documents to be produced in

a manner to reduce any harm. *See* Fed. R. Civ. P. 26(c)(1).

      As previously indicated, "state privilege laws do not govern" in this federal question

case. *See Moroughan v. Cty. of Suffolk*, CV 12-512 (JFB)(AKT), 2013 WL 12458177, at *6

(E.D.N.Y. Aug. 13, 2013) (quoting *Bruno v. CSC Transp., Inc.*, 262 F.R.D. 131, 133 (N.D.N.Y.

2009)) (internal quotations omitted).  However, it is well-settled that "state laws may underscore

important privacy interests that the Court should consider." *See Sparks v. Seltzer*, No. 05-CV-

1061 (NG)(KAM), 2006 WL 2358157, at *5 (E.D.N.Y. Aug. 14, 2006); *see also Unger v.

Cohen*, 125 F.R.D. 67, 69 (S.D.N.Y. 1989); *King v. Conde*, 121 F.R.D. 180, 187 (E.D.N.Y.

1988).  Indeed, "the unnecessary disclosure of private and personal information is a concern that

runs with equal strength through the federal system." *Benacquista v. Spratt*, Civ. No. 1:16-CV-

0581 (DNH/DJS), 2017 WL 11286310, at *3 (N.D.N.Y. Mar. 7, 2017) (citing *S.E.C. v.*

*Rajaratnam*, 622 F.3d 159 (2d Cir. 2010)).  In the context of requests for law enforcement files

in civil rights cases, for example, such interests include, *inter alia*, threats to personal safety;

invasion of privacy interests in "highly personal information" that is "unrelated" to the acts at

issue; potential "chilling of internal investigations or citizen complainant candor;" and

"protection of names of informers and information affecting ongoing criminal investigations,

particularly if" disclosure implicates "a possible target." *See Unger*, 125 F.R.D. at 70 (quoting

*King*, 121 F.R.D. at 191–95) (internal quotations omitted).

A court cannot "infer[]" "[t]he presence of [the above] factors . . . from the 'generalized

policies' supporting the confidentiality of the records," however. *See id.* (quoting *King*, 121

F.R.D. at 189) (internal quotations omitted).  District courts within this Circuit have held that to

succeed on a claim based on state privilege laws, the withholding party first must make a

"substantial threshold showing of specific harms likely to accrue from disclosure of [the] specific

materials." *See King*, 121 F.R.D. at 189; *see also Sparks*, 2006 WL 2358157, at *5; *Unger*, 125

F.R.D. at 70.  Only after such a showing is made should the court consider "the question of

balancing the [potential] harm against the interests favoring disclosure."[4] *Unger*, 125 F.R.D. at

70; *see also King*, 121 F.R.D. at 189–90.  If the objecting party "make[s] no such showing, the

court has 'no choice but to order disclosure.'" *King*, 121 F.R.D. at 189 (quoting *Kelly v. City of*

*San Jose*, 114 F.R.D. 653, 669 (N.D. Cal. 1987)).

---

[4] Such a showing "is required because (1) the frequency with which this type of privilege could be invoked could be harmful to the judicial process without a required demonstration of probable harm, and (2) due to the situation-specific analysis required . . . , a showing of harm likely to result from disclosure is necessary for a court to conduct any meaningful balancing analysis of the costs and benefits of disclosure." *Sparks*, 2006 WL 2358157, at *5; *see also Unger*, 125 F.R.D. at 70 ("This procedure is intended to discourage 'pro forma' invocation of privilege as to documents that should be disclosed.") (quoting *King*, 121 F.R.D. at 189).

"Th[e] threshold showing must explain the reasons for nondisclosure with particularity, so that the court can make an intelligent and informed choice as to each requested piece of information." *King*, 121 F.R.D. at 189.  Thus, "unsubstantiated fear of 'possible'" events based on conclusory assertions is insufficient because the anticipated harm cannot be "speculative." *See Sparks*, 2006 WL 2358157, at *6; *see also Moroughan*, 2013 WL 12458177, at *7; *Unger*, 126 F.R.D. at 70.  Indeed, in order to satisfy this standard, the withholding party must submit "a declaration or affidavit, under oath and penalty of perjury, from a responsible official within the agency who has" personally reviewed the documents at issue, and which sets forth in non-conclusory terms how they have "been generated or collected; how they have been kept confidential; what specific interests . . . would be injured by disclosure . . . ; and the projected severity of each such injury." *King*, 121 F.R.D. at 189 (quoting *Kelly*, 114 F.R.D. at 669) (internal quotations omitted); *see also Unger*, 126 F.R.D. at 70.

If the standard is satisfied, the court balances the alleged harm against "the purposes of federal discovery and privilege law." *See King*, 121 F.R.D. at 187.  As a general matter, federal law encourages disclosure of relevant information in light of the broad scope of discovery and truth-seeking purpose of Rule 26(b). *See id.*; *see also Kelley v. City of Hamden*, Civ. No. 3:15CV00977(AWT), 2015 WL 9694383, at *4 (D. Conn. Nov. 23, 2015); Fed. R. Civ. P. 26(b). This policy is paramount in Section 1983 cases, and especially those alleging government wrongdoing, because the purpose of that statute is to protect citizens' civil rights and prevent abuses of power by state and local governments and their officials. *See King*, 121 F.R.D. at 187-88; *see, e.g.*, *Moroughan*, 2013 WL 12458177, at *8; *Floyd v. City of New York*, 739 F. Supp. 2d 376, 382 (S.D.N.Y. 2010); *Unger*, 126 F.R.D. at 69.  Indeed, summary application of state confidentiality laws without accounting for this purpose could permit government actors to

"effectively insulate themselves from constitutional norms simply by developing privilege doctrines that ma[k]e it virtually impossible for plaintiffs to develop the kind of information they need to prosecute their federal claims." *See King*, 121 F.R.D. at 188 (quoting *Kelly*, 114 F.R.D. at 656).

When balancing these considerations, "courts have considered the parties' need for the materials at issue and whether a protective order by the court can address the purposes underlying the confidentiality statute." *Steinberg v. Mount Sinai Med. Ctr., Inc.*, No. 12 Civ. 51(SLT)(VMS), 2014 WL 1311572, at *3 (E.D.N.Y. Mar. 31, 2014).  In addition, Rule 26(c) specifically authorizes courts to enter protective orders prohibiting or specifying the terms of discovery to prevent or limit oppression or unduly burdensome disclosure. *See* Fed. R. Civ. P. 26(c)(1); *see also Benacquista*, 2017 WL 11286310, at *2.  Thus, courts should consider whether such an order can address the concerns underlying state confidentiality statutes while supporting the federal policy militating towards disclosure. *See Steinberg*, 2014 WL 1311572, at *3.

Here, Defendants seek protection from disclosure based on N.Y. Exec. Law § 259-i(2)(c)(B) and N.Y. Comp. Codes R. & Regs., tit. 9 § 8002.4(e).[5] (Docket No. 240 at 6-7).  As a preliminary matter, the Court notes that although these regimes require keeping certain personal identifying information and victim impact statements "confidential," *see supra* n.5, they do not expressly create protection by an evidentiary privilege.  Moreover, the BOP's regulations allow disclosure of victim impact statements upon consent of the victim or court order. *See* N.Y. Comp. Codes R. & Regs., tit. 9 § 8002.4(e).  Confidentiality or non-disclosure provisions in state

---

[5] N.Y. Exec. Law § 259-i(2)(c)(B) provides that "[w]here a crime victim or victim's representative as defined in subparagraph (A) of this paragraph, or other person submits to the parole board a written statement concerning the release of an incarcerated individual, the parole board shall keep that individual's name and address confidential." N.Y. Exec. Law § 259-i(2)(c)(B).  N.Y. Comp. Codes R. & Regs., tit. 9 § 8002.4(e) states that "[a] written victim impact statement or written report of an oral statement shall be maintained in confidence by the division, unless disclosure to the inmate is expressly authorized by the victim or by court order." N.Y. Comp. Codes R. & Regs., tit. 9 § 8002.4(e).

statutes "may not always create an evidentiary privilege, especially if the legislature did not

'explicitly'" do so. *See Amtrust N. Am., Inc. v. Safebuilt Ins. Servs., Inc.*, 186 F. Supp. 3d 278,

284 (S.D.N.Y. 2016) (quoting *Van Emrik v. Chemung Cty. Dep't of Soc. Servs.*, 121 F.R.D. 22,

25 (W.D.N.Y. 1988)) (finding that statutory provision did not create evidentiary privilege

because it designated materials as "confidential" but did not use the word "privilege" or provide

that the subject materials were not discoverable or admissible in private actions). "If the

information sought is confidential but not privileged, FRCP 26 does not limit disclosure of

otherwise discoverable information." *Steinberg*, 2014 WL 1311572, at *2. Based on the dearth

of explicit language invoking an evidentiary privilege in the Executive Law or BOP regulations,

the Court is doubtful that the materials are protected by any state-law privilege that would trigger

the "substantial threshold" test. *See Amtrust*, 186 F. Supp. 3d at 284–85; *see also King*, 121

F.R.D. at 191–92 (noting that alleged "privilege" in New York civil rights statute "[wa]s not

really a privilege in the sense that it could justify complete refusal to disclose relevant

evidence").

    In any event, assuming, *arguendo*, that the state law created such a privilege, Defendants

fail to make the requisite showing of specific harm that would result from disclosure. *See King*,

121 F.R.D. at 189. The only harm that Defendants describe with particularity relates to Mr.

Horein's institutional file, which Defendants assert contains victim impact and community

opposition statements that are so detailed that disclosure of their contents—even without names,

addresses and other personal identifying information—would necessarily reveal the speakers'

identities because of the close-knit nature of the town where Mr. Horein committed his crimes.

(*See* Docket No. 240 at 4-5). However, Defendants have not submitted an affidavit or

declaration substantiating these concerns, or attesting to the confidentiality of these records. *See King*, 121 F.R.D. at 189.

With respect to the rest of the files, Defendants' description of the harm that would result from disclosure is conclusory, and thus, insufficient.  Defendants argue that disclosure would (1) betray public trust and confidence "in promises of confidentiality made by state agencies;" (2) create a "chilling effect" on future victims' willingness to come forward to law enforcement; (3) "negatively impact[]" the current victims' "feelings of personal safety and well being;" and (4) create personal safety risks in the event that any Plaintiff or Prospective Plaintiff becomes aware of the identity of the victims who made each particular statement. (Docket No. 240 at 2-6). However, these arguments are not based on any facts specific to the documents, victims or community members at issue, and thus, amount to a recitation of generalized policies supporting confidentiality, which do not satisfy the standard here. *See Unger*, 125 F.R.D. at 70.  Defendants also cannot credibly argue that the victims and community members made statements based on "promises of confidentiality" when the Executive Law only protects such persons' names and addresses, N.Y. Exec. Law § 259-i(2)(c)(B), and the BOP regulations (a) do not protect the substance of community opposition statements, and (b) expressly permit disclosure of victim impact statements upon a court order, N.Y. Comp. Codes R. & Regs., tit. 9 § 8002.4(e). (*See* Docket No. 240 at 2-6).

Moreover, although the "chilling" of victims', their families' and communities' candor may sometimes satisfy the "substantial threshold showing" requirement, the Court finds the policy and privacy interests at play in such cases distinguishable. *See DeLeon v. Putnam Valley Bd. of Educ.*, 228 F.R.D. 213, 217 (S.D.N.Y. 2005); *see also Velez v. Reynolds*, No. 02 Civ. 8315 (JGK) (DFE), 2003 WL 22126962, at *2 (S.D.N.Y.2003).  Indeed, *DeLeon v. Putnam Valley Bd.*

*of Educ.*, 228 F.R.D. 213, 217 (S.D.N.Y. 2005), cited by Defendants, involved a request for the name of a reporter of suspected child abuse that was otherwise protected by state privacy laws. (Docket No. 240 at 4).  The *DeLeon* court prohibited disclosure because revealing the reporter's name would threaten her safety and disincentivize others to come forward, thus frustrating the laws' purpose of protecting abused children. *See* 228 F.R.D. at 217, 221.  This case is different from *DeLeon* because the Plaintiffs and Proposed Plaintiffs are already aware of the identities of their victims, so revealing them would not create new safety risks. *Cf. Thompson v. Keane*, No. 95 CIV. 2442 (SHS) (AJP), 1996 WL 125659, at *7 (S.D.N.Y. Mar. 20, 1996), *aff'd*, 1996 WL 229887 (S.D.N.Y. May 6, 1996).  Defendants' reliance on *DeLeon* is also unpersuasive because that case concerned protection of the reporter's identity only, and Plaintiffs have already agreed to the redaction of personal identifying information here. (Docket No. 236 at 5).

In light of this agreement, the rest of the alleged harm cited by Defendants is simply too speculative. *See Sparks*, 2006 WL 2358157, at *6.  Defendants do not explain with any particularity how the safety of victims or community members would be compromised by disclosure of the subject statements if these individuals' identities are not revealed, and thus, neither the Plaintiffs, nor Proposed Plaintiffs, have any way of discerning who made each particular statement.  Under similar circumstances, courts have "expressed skepticism" that disclosure of the substance of investigative files, apart from personal identifying information, would necessarily create a "chilling effect" or safety or security concerns. *See Morrissey v. City of New York*, 171 F.R.D. 85, 92 (S.D.N.Y. 1997); *see also Thompson*, 1996 WL 125659, at *5; *King*, 121 F.R.D. at 198.  Furthermore, simply because the Plaintiffs have been released from prison does not mean that they will recidivate.[6]  (*See* Docket No. 240 at 5 n.1).  The same is true

---

[6] The Court also rejects Defendants' assertion that discovery of the Withheld Materials related to the Plaintiffs is unnecessary because the Plaintiffs can be dropped from the case once the Prospective Plaintiffs are added. (Docket

with regard to the potential impact of disclosure on "victims' personal feelings,"[7] which

Defendants assert will "likely" be negative without any factual support. (*See* Docket No. 240 at

4); *see also Sparks*, 2006 WL 2358157, at *6 ("MHLS's unsubstantiated fear of 'possible'

reduced access to mental health facilities does not satisfy the initial 'substantial threshold

showing' because the harm that MHLS anticipates from Ms. Gest's disclosure is far too

speculative."). Absent the requisite particularized showing of harm here, and in light of the

relevance of the subject statements, *see supra* Section III.A, the Court "has no choice but to

order disclosure." *See King*, 121 F.R.D. at 189 (quoting *Kelly*, 114 F.R.D. at 669) (internal

quotations omitted).

      Moreover, the secretive decision-making by Defendants that Plaintiffs assert takes place

is the exact kind of constitutional violation that federal civil rights actions are meant to expose,

and goes directly to Plaintiffs' Section 1983 claims. *See id.* at 187–88. The requested materials

may constitute one of the few ways available to Plaintiffs to prove these allegations. *See*

*Andersen v. City of Chicago*, No. 16 C 1963, 2019 WL 423144, at *5 (N.D. Ill. Feb. 4, 2019)

(ordering disclosure of victim impact letters where they potentially contained relevant

information that was "otherwise not available to Defendant[s]"); *Benaquista*, 2017 WL

---

No. 240 at 5 n.1). First, Plaintiffs have not amended the SAC to add these individuals, so this argument is premature. Second, it would be entirely inappropriate for Defendants to dictate the terms of discovery based on how they think Plaintiffs should prosecute their case. *Cf. In re Seroquel Prod. Liab. Litig.*, Case No. 6:06-md-1769-Orl-22DAB, Case No. 6:07-cv-01698-Orl-22DAB, Case No. 6:08-cv-00622-Orl-22DAB, Case No. 6:08-cv-00352-Orl-22DAB, 2010 WL 11623607, at *3 (M.D. Fla. June 18, 2010).

[7] The Court also notes that much of the harm Defendants reference is specific to crime victims rather than other persons who submit community opposition statements. Although the parties dispute the definition of the term "victim," (*see* Docket Nos. 236 at 21-22; 240 at 8-9), the Court need not reach that issue because, as explained *infra*, the Court orders disclosure of all of the subject statements, except for names, addresses and other personal identifying information. This result comports with the Executive Law's protection of such information for victims, victim representatives, and "other persons" who submit written statements concerning the release of an inmate on parole. *See* N.Y. Exec. Law § 259-i(2)(c)(B); *cf. Applewhite v. New York State Bd. of Parole*, 91 N.Y.S.3d 308, 311 (3d Dep't 2018).

11286310, at *4 (directing disclosure of police files identifying sexual assault victims where "Plaintiff [wa]s at a substantial disadvantage" due to her relative inaccess to information). Moreover, the Court can minimize the probability of harm, oppression or invasion of privacy by requiring that the materials be designated AEO, and be produced with names, addresses and any other "personal identifying information" redacted.[8, 9] *See Bies v. Bagley*, No. 1:00-cv-682, 2005 WL 8168620, at *2 (S.D. Ohio Feb. 8, 2005) (requiring production of victim impact statements under AEO designation); *see also Benaquista*, 2017 WL 11286310, at *4; *King*, 121 F.R.D. at 198; Fed. R. Civ. P. 26(c). Consequently, even if Defendants met the "substantial threshold showing" of harm required, on balance, the potential importance of the Withheld Materials to this case, combined with the Court's ability protect the interests at stake by limiting the terms of their discovery, weigh in favor of disclosure.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs' motion to compel is granted. Consistent with this Opinion & Order, (a) the Withheld Materials must be designated AEO as set forth under the terms of the protective orders previously entered in this action; and (b) the Withheld Materials must be produced with redactions applied to the name, address and any other personal identifying information of the sender.

---

[8] To the extent Defendants argue that this solution impermissibly contradicts the BOP regulations, (Docket No. 240 at 7), the Court need not adhere to state procedures when specifying the terms of this discovery. *See Martin v. Lamb*, 122 F.R.D. 143, 147 (W.D.N.Y. 1988). Moreover, Defendants' assertion that these regulations require complete confidentiality is belied by the fact that New York courts appear to order disclosure of victim impact statements and other confidential information in parole files when appropriate. *See, e.g.*, *Thorn v. New York State Bd. of Parole*, 66 N.Y.S.3d 712, 715 (3d Dep't 2017); *Costello v. New York State Bd. of Parole*, 957 N.Y.S.2d 486, 488–89 (3d Dep't 2012), *rev'd on other grounds*, 23 N.Y.3d 1002 (2014); *Maggio v. State*, 452 N.Y.S.2d 719, 721 (3d Dep't 1982).

[9] To the extent any Withheld Materials reference names, addresses or other personal identifying information of persons other than the sender, "the parties are expected to cooperate in agreeing to redact" this information "where revelation" may also interfere with these persons' privacy "without substantial advantage" to Plaintiffs. *See King*, 121 F.R.D. at 198.

- 19 -

The Clerk is respectfully requested to terminate the pending motion (Docket No. 235).

Dated: February 7, 2022
        White Plains, New York

**SO ORDERED:**

_____
JUDITH C. McCARTHY
United States Magistrate Judge